WILLIAM B. ARMSTRONG AND LAWYERS COUNTY TRUST COMPANY, COMMITTEE OF THE PROPERTY OF WILLIAM B. ARMSTRONG, INCOMPETENT, PETITIONERS, *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT.

Docket No. 58603.   Promulgated August 27, 1935.

*James L. Dohr, Esq.*, for the petitioners.
*George R. Sherriff, Esq.*, for the respondent.

OPINION.

MORRIS: The petitioner abandoned and expressly waived the matters complained of in (a) and (b), and (f) having been settled by stipulation of the parties, the remaining issues, (c), (d), and (e), present one major question for our determination, probably the sole question if we decide that question in favor of the petitioner, and that is whether or not the trust created by Armstrong under the indenture of May 31, 1927, is revocable, as the respondent contends, and hence the grantor of the trust may at any time cause the distribution of the income thereof in the manner provided in section 219 of the Revenue Act of 1926 and similar sections (166 and 167) of the Revenue Act of 1928, or irrevocable, as the petitioner alleges and contends. Subsections (g) and (h) of section 219 of the Revenue Act of 1926 are as follows:

(g) Where the grantor of a trust has, at any time during the taxable year, either alone or in conjunction with any person not a beneficiary of the trust, the power to revest in himself title to any part of the corpus of the trust, then the income of such part of the trust for such taxable year shall be included in computing the net income of the grantor.

(h) Where any part of the income of a trust may, in the discretion of the grantor of the trust, either alone or in conjunction with any person not a beneficiary of the trust, be distributed to the grantor or be held or accumulated for future distribution to him, or where any part of the income of a trust is or may be applied to the payment of premiums upon policies of insurance on the life of the grantor (except policies of insurance irrevocably payable for the purposes and in the manner specified in paragraph (10) of subdivision (a) of section 214), such part of the income of the trust shall be included in computing the net income of the grantor.

Both parties base their arguments upon section 23 of the New York Personal Property Law (McKinney, vol. 40—Cahill, ch. 42), which provides as follows:

Upon the written consent of all the persons beneficially interested in a trust in personal property or any part thereof heretofore or hereafter created, the creator of such trust may revoke the same as to the whole or such part thereof, and thereupon the estate of the trustee shall cease in the whole or such part thereof.

The respondent's argument is that the grantor is the only person " beneficially interested " within the meaning of section 23, *supra*, as interpreted by the courts of New York. He says:

\* \* \* only those who take, under the trust agreement, a present vested interest which is descendible, devisable and alienable, as opposed to a mere expectancy or hope, and that while contingent beneficiaries may be persons " beneficially interested " under Section 23, the contingency must relate to *time* and not to *person* or class of persons who take.

Therefore, it is argued, the grantor had the sole power of revocation and termination of the trust estate in 1927 and 1928. Thus, he says, " the real question for determination is whether there was, during the years 1927 and 1928, any person other than petitioner who was beneficially interested, and whose consent to a revocation was therefore necessary." He does not contend, as we grasp the significance of his argument, that there was " any person not a beneficiary " in conjunction with whom the grantor could have revested in himself the title to the trust corpus or the income therefrom. His contention strikes deeper at the very conception of the trust itself, it being, in effect, that the trust was declared for his benefit and subject to his sole domination and control.

While not essential to our conclusion, it should be said, at the outset, that the word " beneficiary " as used in section 219, *supra*, is all-inclusive and is not confined to " vested " interests, as distinguished from those that are " contingent." *Bessie R. Jones*, 27

B. T. A. 171; *Iola Wise Stetson*, 27 B. T. A. 173, and *Smith* v. *Commissioner*, 59 Fed. (2d) 56. In the latter case, the court, construing the word "beneficiary" as used in section 219, said:

Undoubtedly Congress could have drawn a line between beneficiaries holding vested and contingent interests, or between those having contingent interests based on their respective degrees of remoteness, but it has done neither of these things. It is, therefore, far more reasonable to conclude that by the word "beneficiary" Congress intended to include persons or classes of persons designated, in the particular trust under consideration, entitled to take present or contingent interests thereunder.

A case strikingly similar, upon the facts, to the instant case—this the respondent concedes, but which he contends is contrary to the weight of authority in the State of New York—is *Hammond* v. *Chemung Canal Trust Co.*, 252 N. Y. S. 259, decided by the Supreme Court of New York July 23, 1931. In that case the plaintiff, Hammond, placed certain personalty with the defendant trust company, under a trust agreement providing for the payment of the income therefrom to him for life and of the principal upon his death " to such persons as he should name in his will, and, if he should die intestate, to his next of kin." Action having been brought to revoke the trust so created under the provisions of section 23, *supra*, it was alleged and contended, as here, that there were no persons beneficially interested and therefore no written consent was necessary for the revocation of such trust. The court there alludes to the lack of harmony in the decisions handed down by the courts of New York since the enactment of section 23 in 1909, and refers, at the same time, to three groups of cases, most of which have been cited *pro* and *con* by the parties in this proceeding, (1) those where the grantor has reserved to himself the power to direct the disposition of the principal by his will with the remainder over to his next of kin—in which revocability without the consent of such next of kin was found—*Stella* v. *New York Trust Co.*, 229 N. Y. S. 166; *Cruger* v. *Union Trust Co. of New York*, 160 N. Y. S. 480; *Sperry* v. *Farmers' Loan & Trust Co.*, 139 N. Y. S. 192; and *Goodwin* v. *Broadway Trust Co.*, 149 N. Y. S. 1033, though, the court pointed out, a contrary decision was reached in *Crackanthorpe* v. *Sickles*, 141 N. Y. S. 370; (2) where the grantor reserved no power to so will but provided that the remainder should go to his children or next of kin—in which irrevocability was found—*Williams* v. *Sage*, 167 N. Y. S. 179, *Gage* v. *Irving Bank & Trust Co.*, 225 N. Y. S. 476; and (3) where the grantor reserved the right to use the principal if necessary with remainder, if any, to next of kin—in which revocability was found—*Whittemore* v. *Equitable Trust Co.*, 147 N. Y. S. 1058, but, the latter of which was questioned in *McKnight* v. *Bank of New York & Trust Co.*, 254 N. Y. 417; 173 N. E. 568. It then said:

Whatever uncertainty existed seems to have been clarified by the Court of Appeals in *Henry Whittemore* v. *Equitable Trust Co. of New York*, supra. The test there established is the intent of the settlor, the court saying: " This is all a matter of intention * * *. To determine, therefore, whether the settlor of the trust * * * simply created a life interest and nothing more, reserving to himself the balance of the interest in the property, we looked to his intention, as expressed in the instrument." In that case, three settlors established a trust fund with two life beneficiaries. Each settlor provided: (1) That in the event of his death before the life beneficiaries, the trustee should pay his share of the principal as directed by his will; (2), that if he left no will, the trustee should pay it to the persons who would take under the statute of distributions, that is, to his next of kin; (3) he made no provision for paying the principal to his grantee or assignee; (4) he made full and formal disposition of the principal of the trust estate; (5) he reserved power of disposition " only by will." The settlors and the sole surviving life beneficiary consented to the revocation, but some of the settlors had children who were infants and could not consent. In the event of the death of a settlor before the life beneficiary, these children would take that settlor's share in the principal, subject to the disposition of such share by such deceased settlor's will. The interest of these children, in the words of the court, could not be " conveyed away " by the settlor in his lifetime, but " could only be divested or cut off by a last will and testament. * * * That such an uncertain or variable interest of the next of kin is alienable. * * * " The trust was held irrevocable.

In the present case, the settlor (plaintiff) provided for the payment of the income to himself as life beneficiary, and that upon his death the trustee should pay the principal (1) as directed by his will, and (2) if he left no will, the trustee should pay the principal to his next of kin, that is, those who would take under the statute of distributions (Decedent Estate Law, art. 3, §80 et seq.). (3) No provision was made for paying the principal to any grantee or assignee of the settlor, in fact he expressly provided (though this provision is not controlling) that the trust was irrevocable, and expressly surrendered " all right and power to amend, modify or revoke " the trust during his lifetime. He not only expressed an intent that the agreement should be irrevocable, but he did that which was necessary in law to make it irrevocable, viz., he created beneficial interests in remainder which could be cut off only by his will. (4) He made a full and formal disposition of the principal; he provided for every contingency, and in no event can there be any uncertainty upon his death as to who will take the principal. His daughter will take, if living, otherwise his other next of kin. (5) He reserved only the power of disposition by will.

We think that his intention as expressed by the trust agreement was to entirely divest himself of any power or control over the principal except by his will, and that his next of kin are beneficially interested in the trust, and their consents, therefore, necessary to its revocation.

The *Whittemore Case* is distinguishable from the present case in only two respects; in that case, if any settlor survived the life beneficiaries, the principal reverted to the settlor. In this respect, the settlors in the *Whittemore Case* reserved more power and control than in the present case. In the present case, the settlor is himself the life beneficiary, while in the *Whittemore Case*, parties other than the settlors were the life beneficiaries. We do not see that this is material. In the cases cited in the *Whittemore Case* the settlor was himself the life beneficiary. *Crackanthorpe* v. *Sickles*, supra, and *Court* v. *Bankers' Trust Co.*, supra.

The *Henry Whittemore* decision referred to in the foregoing quotation is *Whittemore* v. *Equitable Trust Co. of New York*, 250 N. Y. 298; 165 N. E. 454, handed down by the Court of Appeals of New York February 13, 1929, reversing the decision of the Appellate Division of the Supreme Court, 229 N. Y. S. 440. That case is relied upon by the petitioner and is designated by the parties as the " Second Whittemore Case."

It is the so-called " First Whittemore Case ", *Whittemore* v. *Equitable Trust Co.*, 147 N. Y. S. 1058, handed down by the Appellate Division of the Supreme Court May 29, 1914, to which previous reference has been made, that the respondent relies upon. In that case the plaintiff, Whittemore, party of the first part, and the Van Norden Trust Co., second party, executed a trust indenture by which the plaintiff transferred to that company certain securities, in trust, to pay the net income to the plaintiff, or for her use, for her lifetime, and to pay over to her, or for her use, such portion of the principal as in the opinion of the Trust Co. might be necessary for her support, in addition to the income and profits, and upon her death to distribute the principal of said fund among her next of kin. The deed of trust contained no express reservation of power of revocation. The defendant was the successor, by merger, of the Van Norden Trust Co. The plaintiff attempted to revoke the trust, pursuant to section 23 of the Personal Property Laws of New York, by serving upon the defendant a formal notice in writing. The defendant declined to comply with the notice, resulting in this action. The submission was agreed upon, in which it was recited that " ' the present next of kin of the plaintiff are ' " a brother and sister therein named. It was not contended there that the trust was " irrevocable " for the reason that it could not be determined until the death of the plaintiff who would be " her next of kin ", but it was contended that the consent of the brother and sister to the revocation was necessary, the theory being that the brother and sister " now have a beneficial interest in the deed of trust " and accordingly " have a contingent interest in the remainder." In giving judgment for the plaintiff, revoking the deed of trust and directing the delivery of the corpus, etc., the court said:

The determination of the question as to who are beneficially interested in a trust necessarily requires a construction of the deed of trust, and where the settlor of the trust and the trustee are the only parties thereto, the construction depends upon the intention of the settlor. It is quite evident, I think, that the plaintiff did not intend by this deed of trust to give those who will be her next of kin at the time of her death a present beneficial interest in the property. She merely intended to turn over the management of her securities to the trust company for her own benefit, and to relieve her of the responsibility of looking after them, collecting the income, selling when advisable, and reinvesting. She reserved to herself, with the consent of the trustee, the right to use the entire

property if necessary. It is therefore manifest that her sole object in creating the trust was to provide for her own necessities and comfort during life. It is true the deed of trust contains the provision that the trustee shall upon her death *distribute* the principal of the trust fund then remaining among her next of kin; but I think no particular significance is to be attached to that provision. It may have been thought that without some provision of the kind the trust company would take the remainder; and the provision, I think, was inserted merely as a direction to the trust company with respect to disposing of the property after her death, and she directed that it be distributed as the law provides for the distribution of the property of an intestate. Nor do I think any significance is to be attached to the fact that she did not direct that the trustee deliver it to her administrator. She probably had no intention of leaving debts, and supposed that her property could be distributed in this manner without other administration. There could be no purpose in directing the trustee to distribute it among her next of kin, rather than deliver it to her administrator, for if she left debts, property held under such a trust to the extent of her interest would be subject thereto (Personal Property Law, § 34· see, also, *Schenck* v. *Barnes*, 156 N. Y. 316, 50 N. E. 967, 41 L. R. A. 395), and I think she intended to retain an interest and had an interest in all of it.

[3] Moreover, a living person has no next of kin; and a possible interest as an heir or one of the next of kin of a living person is not descendible, devisable or assignable, and therefore there is no one who has even a contingent interest in the property as the next of kin of the settlor of the trust. *Robinson* v. *N. Y. Life Ins. & Trust Co. et al.*, 75 Misc. Rep. 361, 133, N. Y. Supp. 257; *National Park Bank* v. *Billings*, 144 App. Div. 536, at page 540, 129 N. Y. Supp. 846, affirmed 203 N. Y. 556, 96 N. E. 1122. See, also, *Sperry* v. *Farmers' Loan & Trust Co.*, 154 App. Div. 447, 139 N. Y. Supp. 192, and *Hoskin* v. *L. I. Loan & Trust Co.*, 139 App. Div. 258, 123 N. Y. Supp. 994, affirmed 203 N. Y. 588, 96 N. E. 1116.

*Hammond* v. *Chemung Canal Trust Co., supra*, sets forth all of the material considerations and facts of the " Second Whittemore Case ", to obviate repetition here.

Our examination of all of the cases to which our attention has been directed, but which we need not discuss in detail, convinces us that the so-called " Second Whittemore Case " upon which the petitioner relies correctly interprets section 23 of the Personal Property Law of New York, and that the conclusion that the trust under consideration there was irrevocable should be adopted here. We believe there was a clear intention upon the part of the grantor to make an absolute disposition of his property in trust, he to receive its net income during his natural life and upon his death the corpus thereof to be paid to such person or persons as designated by his last will and testament, and in the default of the exercise of such appointment to pay such corpus in equal shares to his next of kin, being, of course, those who would take according to the statute of distributions of the State of New York. He reserved no power of revocation, expressly or otherwise. Therefore, the heirs at law were so " beneficially interested " in this trust as to require their written consent thereunder before such trust, under section 23 of the Personal Prop-

erty Law of New York, could be revoked. It follows, therefore, that the grantor did not have the absolute power of revocation as the respondent contends. See *Corbett* v. *Bank of New York & Trust Co.*, 242 N. Y. S. 638; *Cagliardi* v. *Bank of New York & Trust Co.*, 243 N. Y. S. 573; *Meyer* v. *Bank of Manhattan Trust Co.*, 249 N. Y. S. 640; *Berlenbach* v. *Chemical Bank & Trust Co.*, 256 N. Y. S. 563, in which " intent " was found lacking, thus distinguished from the " Second Whittemore Case." In re *Brunswick's Estate*, 256 N. Y. S. 879 and others.

We are of the opinion that the trust in controversy was irrevocable and that the settlor could not " alone or in conjunction with any person not a beneficiary of the trust " effect a distribution of its corpus or any part of the income therefrom, other than as provided for in the indenture.

*Judgment will be entered under Rule 50.*